IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THEODORE A. ATANASOFF and ANN ATANASOFF, Parents and Natural Guardians of a Minor Child, NPA,** | CIVIL NO. 1:05-CV-0513 |
| | JUDGE SYLVIA H. RAMBO |
| **Plaintiffs,** | |
| v. | |
| **LOWER DAUPHIN SCHOOL DISTRICT,** *et al.*, | |
| **Defendants.** | |

**M E M O R A N D U M**

Before the court is Defendants' Motion to Enforce Settlement and Mediation Agreement. (Doc 49.) The parties have briefed the issue, and the matter is ripe for disposition. For the reasons that follow, the court will deny Defendants' motion.

**I.      History**

On July 6 and August 5, 2005, pursuant to a joint case management plan (Doc. 23), the parties participated in mediation sessions with a court-appointed mediator. On August 8, 2005, the court-appointed mediator entered a letter with the court indicating that the parties had "reached a tentative settlement agreement that was contingent upon approval by the School Board." (Doc. 32.) According to the court-appointed mediator's report: "[A] settlement will not be reached until school board approval has been given." (*Id.*) The Lower Dauphin School District School

Board ("School Board") meeting and vote on the tentative agreement was scheduled for August 22, 2005.  (*Id.*)

On August 24, 2005, the court appointed mediator sent a second letter to the court.  (Doc. 49, Ex. F)  In this report, the mediator indicated that: "[P]laintiffs' counsel advised that his clients had reconsidered and would only agree to the settlement with additional language added to the written non-monetary agreement between the parties."  (*Id.*)  Furthermore, the report stated that "the School Board did approve the tentative settlement agreement as it existed at the time of the [first] letter [to the court]."  (*Id.*)  Finally, the court-appointed mediator expressed that the mediation had reached an impasse and that there was nothing further that he could do to facilitate a settlement.  (*Id.*)  Based on the affirmative School Board vote, Defendants Randall L. Umberger, Sherri L. Smith, and Jeffery D. Hughes signed the settlement agreement; however, Plaintiffs refused to sign.

On September 13, 2005, Defendants filed a Motion to Enforce Settlement and Mediation Agreement (Doc. 33), based on events that transpired at the mediation sessions and afterwards, through various in-person, e-mail, and telephone conversations.  Plaintiffs then filed a Motion to Strike Defendants' Motion to Enforce  (Doc. 36), on September 23, 2005, on the grounds that Defendants' motion disclosed the content of the mediation sessions in violation of Local Rule 16.8.6(c).  On October 7, 2005, Defendants filed a Motion to Compel production of the transcript of an August 5, 2005 voicemail message from Plaintiffs' counsel Luther Milspaw to the court-appointed mediator.  (Doc. 41.)

On October 13, 2005, the court granted Plaintiffs' motion to strike and struck the motion to enforce, without prejudice to the filing of a new motion that

complied with Local Rule 16.8.6(c).  (Doc. 44.)  The court also granted Defendants' motion to compel production of the transcribed August 5, 2005 voicemail message from Mr. Milspaw to the court-appointed mediator and ordered *in camera* submission of the transcript, with the condition that any references to the substance of the settlement negotiations made in the mediation sessions be redacted.  (*Id.*)  However, the court-appointed mediator's voicemail from Plaintiffs' attorney was inadvertently deleted.  ( Doc. 46.)  Defendants subsequently filed a motion to depose the court-appointed mediator by interrogatories to ascertain what Plaintiffs' counsel communicated in the August 5, 2005 voicemail.  (*Id.*)

On December 28, 2005, the court issued an Order vacating the portion of its October 13, 2005 Order that granted Defendants' motion to compel production of the transcribed August 5, 2005.  (Doc. 44.)  In addition, the court denied Defendants' motion to take depositions of the court-appointed mediator.  (*Id.*)  The court held, pursuant to Local Rule 16.8(c), that only communications between the court and the court-appointed mediator may be disclosed. (Doc. 55.)  Therefore, in the instant motion the only documents available for court review are the August 8 (Doc. 32) and the August 24, 2005 (Doc. 49, Ex. F) reports submitted by the court-appointed mediator, Mr. Lavery.

**II.**     **Discussion**

Defendants argue that their motion to enforce should be granted because the parties reached a tentative agreement on August 5, 2005 during mediation, and the tentative agreement is a binding contract on Plaintiffs.  (Doc. 49.)  Defendants also urge that underlying policy considerations favoring settlement

3

agreements should prevail, and thus, Plaintiffs should not be allowed to take advantage of the time between the close of mediation and School Board approval to revoke the settlement. (*Id.*) Plaintiffs assert that the settlement agreement is not binding because, under Pennsylvania law, only the Lower Dauphin County School Board and not the Defendants present at the mediation conference can bind the school district.[1] Further, Plaintiffs argue that since a contract did not exist, they were able to revoke their offer without consequence.[2] The issue for disposition is whether the tentative agreement, which was contingent upon School Board approval, was a binding contract upon both Plaintiffs and Defendants.

### A. Tentative Agreement

Settlement agreements reached through court-ordered mediation are as binding as though reached during litigation. *D.R. v. E. Brunswick Bd. of Educ.,* 838 F.Supp 184, 190 (D.N.J. 1993). Settlement agreements are binding contracts and interpreted under traditional contract principles. *See Pennwalt Corp. v. Plough, Inc.,* 676 F.2d 77, 79 (3d Cir. 1982); *Sch. Dist. of Philadelphia v. Framlau Corp.,* 328 A.2d 866, 870 (Pa. Commw. Ct. 1974). Enforceability of a contract is based on "whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *ATACS Corp. v. Trans World Commc'n, Inc.,* 155 F.3d 659, 665 (3d Cir. 1998).

---

[1] Both the Plaintiffs and the Defendants acknowledge that no School Board members were present during the mediation sessions to approve the agreement. (Doc. 53.)

[2] Plaintiffs also assert that the motion should be stricken because Local Rule 16.8.6(c) prohibits the use of mediation proceedings by any adverse party for any reason in litigation. (Doc 23.) The court in its December 28, 2005 Order sufficiently addressed this issue and has subsequently limited the instant review to communications from the mediator to the court. (Doc. 55.) Therefore, the court need not address Plaintiffs' argument.

Determination of the parties' intent involves evaluating the parties manifestation of assent to the terms and to the consideration of the promise. *Id.* (citing Restatement (Second) of Contracts § 22 (1981)). Therefore, the court looks to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration. *Id.*

In the instant case, the court only needs to examine part one of the three part test to determine that the parties did not reach an enforceable agreement. Manifestation of intent is an objective inquiry, which overlooks the subjective intentions of individual parties. *See Espenshade v. Espenshade,* 729 A.2d 1239, 1243 (Pa. Super. Ct. 1999). Pennsylvania law governs the manifestation of intent of school boards by requiring that a school district may not "enter into a contract of any kind, . . . where the amount involved exceeds $100 dollars,"[3] without the majority vote of all of the school board of directors. 24 Pa. Cons. Stat. Ann. § 5-508 (West 1992). Furthermore, all official actions of a school board must take place at a meeting open to the public. 65 Pa. Cons. Stat. Ann. § 704 (West 2000). Therefore, as a matter of law, a school district does not express its objective intent to be bound by a contract until the school board votes, by a majority, at a public meeting. *See Framlau,* 328 A.2d at 870. Pending that vote, the parties retain the power to revoke or terminate the offer under general contract principles. *See First Home Sav. Bank,*

---

[3] The court is not aware of the specific terms of the settlement agreement. However, it assumes that the tentative agreement reached between Plaintiffs and Defendants at the August 2005 mediation resulted in a settlement of an amount over $100. The court is unaware of why else the School Board would be required to approve the agreement.

5

*FSB v. Nernberg,* 648 A.2d 9, 15 (Pa. Super. Ct. 1994); Restatement (Second) of Contracts § 35 (1981).

      An offeree's power to accept an offer is terminated by a revocation of the offer. *See Nernberg*, 648 A.2d at 15; *See also* Restatement (Second) of Contracts § 36 (1981). Furthermore, offerees possess the power to accept or reject an offer. *See* Restatement (Second) of Contracts § 35 (1981). Therefore, both Plaintiffs and Defendants maintained the power to terminate the tentative agreement prior to or at the School Board meeting.[4] Plaintiffs chose to terminate Defendants' power of acceptance when they contacted Defendants shortly after the August 5, 2005 mediation session and expressed their unwillingness to enter into the agreement. Plaintiffs' revocation occurred prior to acceptance by the School Board, and therefore, negated any tentative settlement agreement reached between Plaintiffs and Defendants.

      Defendants assert that plaintiffs who sue public entities do so at their "own peril."[5] (Doc. 56.) Defendants' reliance on *Framlau* for the assertion that

---

[4] Even if the court addressed this issue as if Defendants were the offerors, the result would remain the same. "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts § 26 (1981). Applying this section to the instant situation, the court concludes that an offer from Defendants would not exist because Plaintiffs knew that Defendants would not be able to conclude the bargaining until the further manifestation of assent by the School Board. Therefore, if Defendants were the offerors, an offer would not exist until School Board approval.

[5] Intertwined in this argument is Defendants' reliance on *Main Line Theaters, Inc. v. Paramount Film Distributing Corp.'s* holding that oral agreements are binding even when they are contingent upon other actions. 298 F.2d 801, 804 (3d Cir. 1962). However, *Main Line Theaters* is distinguishable from the instant case. In *Main Line Theaters,* the parties reached an oral agreement contingent upon the settlement of other litigation that the defendants were concurrently party to. *Id.* Moreover, the defendants involved in the oral agreement had the ability to provide the necessary mutual

(continued...)

Plaintiffs absorb the risk of entering into a tentative settlement agreement with a School Board is misplaced. *Framlau* involved a settlement agreement between a general contractor and a school district. 328 A.2d at 868-69. The school district entered into a written contract with the contractor to perform renovations at a high school. *Id.* After the contractor completed a substantial amount of the construction, the school district terminated the contract. *Id.* The contractor commenced litigation and eventually the parties entered into settlement negotiations. *Id.* The negotiations resulted in a tentative settlement agreement with both parties understanding that the agreement was contingent upon school board approval. *Id.* Although the school board president conveyed to the plaintiff that he would recommend the agreement to the entire school board, the school board chose to reject it. *Id.*

The court held that the school board president did not have implied or apparent authority to enter into a contract binding the school board. *Id.* Moreover, the court held that a contract had not been formed because the agreement lacked school board approval. *Id.* While *Framlau's* facts are distinguishable from the current case, the underlying principles are instructive. A school district is not party to a binding settlement agreement until approval has been granted by a school board vote. *Id.* Accordingly, both parties, not plaintiffs alone, enter into settlement agreements that are contingent upon school board approval at their "own peril." *See id.*

---

[5](...continued)
assent. The contingency in that case was based upon other actions of the defendants. In the instance case, the contingency is based upon the mutual assent of the School Board, which was not achieved until a majority vote of the School Board members. Thus, Defendants' reliance on *Main Line Theaters* is misplaced.

### B. Public Policy

Defendants also assert that municipal defendants would always be placed at an unfair advantage if plaintiffs were able to change the terms of an agreement between the time of negotiations and school board meetings.  Further, Defendants claim that public policy favors settlement agreements, and allowing Plaintiffs to change their mind frustrates the efforts of the parties and the court.  The court agrees that settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of litigation and decrease the court's case load.  *E. Brunswick Bd. of Educ.,* 109 F.3d at  901.  However, allowing Plaintiffs to rescind their initial assent here does not necessarily frustrate public policy because Defendants have the ability to designate individuals who have the authority of the School Board.

Specifically, the School Board is able to enter into a contract by granting, through a majority, express authority to an individual to act on behalf of the School Board.  *See Cadchost, Inc. v. Mid Valley Sch. Dist.,* 512 A.2d 1343, 1346 (Pa. Commw. Ct. 1986) (holding that a school board's attorney had authority to enter into a contract on behalf of the school board only after a majority of the members of the board had authorized him to do so).  Furthermore, Defendant School District has the opportunity to specify appropriate terms to which a settlement agreement can be resolved before the actual mediation commences.  Therefore, the court concludes that public policy does not overcome the general principles of contract or permit school districts to apply specials rules to their mediation efforts.

**III. Conclusion**

      For the reasons stated above Defendants' Motion to Enforce Settlement and Mediation Agreement will be denied. An appropriate order will issue.

                                              s/Sylvia H. Rambo
                                              SYLVIA H. RAMBO
                                              United States District Judge

Dated:  February 14, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THEODORE A. ATANASOFF and ANN ATANASOFF, Parents and Natural Guardians of a minor child, NPA,** : <br> : <br> **Plaintiffs,** : <br> : <br> v. : <br> : <br> **LOWER DAUPHIN SCHOOL DISTRICT,** *et al.***,** : <br> : <br> **Defendants.** : | **CIVIL NO. 1:05-CV-0513** <br><br> **JUDGE SYLVIA H. RAMBO** |

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Enforce Settlement and Mediation Agreement (Doc. 49) is **DENIED**.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: February 14, 2006.